## DEFENDANTS LESLIE AND ABIGAIL WEXNER'S
## COUNTERCLAIMS AGAINST PLAINTIFF NELSON SHANKS

Defendants Leslie and Abigail Wexner, for their Counterclaims against Plaintiff Nelson Shanks, allege as follows:

### PARTIES

1. Defendants Leslie and Abigail Wexner (the "Wexners") are citizens of the State of Ohio and at all relevant times resided at One Whitebarn Road, New Albany, Ohio 43054.

2. Upon information and belief, Plaintiff Nelson Shanks ("Shanks"), is a citizen of the Commonwealth of Pennsylvania and at all relevant times resided at 1163 State Road, Andalusia, Bucks County, Pennsylvania 19020.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the Plaintiff and Defendants, and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4. Venue is properly laid in this district pursuant to 28 U.S.C. § 1391 because Plaintiff resides within the jurisdiction of the Eastern District of Pennsylvania.

### BACKGROUND

5. In or about the beginning of January 2000, Epstein advised the Wexners that Epstein wished to make a gift to the Wexners of a portrait of Defendant Abigail Wexner and her four Children (the "Gift Portrait"). Epstein advised the Wexners

7

that Epstein was considering Shanks as the artist for whom Mrs. Wexner and the children would sit for the Gift Portrait and requested that the Wexners meet with Shanks, so that Shanks could prepare for Epstein a proposal for the Gift Portrait.

6. Epstein expressly prohibited Shanks from discussing with the Wexners any terms or conditions relating to Epstein's possible engagement of Shanks to paint the Gift Portrait.

7. At no time before Shanks sent the Wexners an invoice for Shanks' painting, did Shanks ever discuss with the Wexners any terms or conditions for painting the Gift Portrait, including, without limitation, price.

8. After meeting with Shanks in New York City on or about March 15, 2000, the Wexners consented to have Shanks in their home in New Albany, Ohio to begin the process of developing the proposal for the Gift Portrait.

9. During a two-day period commencing on or about April 26, 2000, the Wexners allowed Shanks to take photographs in the Wexners' home of Defendant Abigail Wexner and her four children, and thereafter, at Shanks request, certain measurements were provided to Shanks of Mrs. Wexner and the children. There existed a clear and express understanding that such pictures and measurements were to be used to develop Shanks' proposal to Epstein for the Gift Portrait.

10. Prior to completing Shanks' painting, Shanks never showed Epstein or the Wexners any of the photographs Shanks had taken during his visit to the Wexners' home, never invited the Epstein or the Wexners to participate in the selection of photos from which Shanks was supposed to develop his proposal to Epstein and,

unbeknownst to Epstein and the Wexners, actually painted Shanks' painting, and never advised the Wexners that Shanks concealed these matters from Epstein.

11.  The Wexners never received a request from Shanks for Defendant Abigail Wexner and her four children to sit for Shanks while he painted the portrait; Shanks never informed Epstein that Shanks made no such request of the Wexners or that Shanks did not intend to make such a request.

12.  Shanks did not inform Epstein or the Wexners of Shanks' decision to paint his painting based solely on the photographs Shanks took in the Wexners' home and on mannequins Shanks prepared from the measurements provided to Shanks, and did not advise the Wexners that Shanks concealed these matters from Epstein.

13.  Prior to completing his painting in or about April 2001, Shanks never informed the Wexners regarding the progress of, Shanks' painting. Shanks never invited Epstein or the Wexners to view and comment on, Shanks' painting. Shanks did not advise or seek input from the Wexners regarding the picture frame Shanks selected for his painting, although prior to Shanks' selection of the picture frame, the Wexners told Shanks that the Wexners intended to hang the Gift Portrait in the Wexner's home.

14.  Much to the surprise of the Wexners, in or about April 2001, the Wexners were informed that Shanks had completed his painting.

15.  At Shanks request, and without knowledge that Epstein had not accepted Shanks' painting, the Wexners arranged for a courier to pick up a painting from Shanks' studio in Andalusia, Pennsylvania and to deliver the painting to the Wexners' home in New Albany, Ohio.

16. Upon viewing Shanks' painting after its arrival at the Wexner's home, the Wexners were shocked to discover that Shanks' "portraiture" was of such a poor quality that the Wexners' own children were unrecognizable to them in Shanks' painting.

17. The Wexners and their agents notified both Shanks and Epstein of the Wexners' dissatisfaction with the poor quality of Shanks' painting,

18. Upon contacting Epstein, the Wexners learned that Epstein had already contacted Shanks to reject the painting for many of the same reasons as those expressed by the Wexners, based on Epstein's review of a transparency of the painting Epstein received from Shanks, but that Shanks had already arranged, without Epstein's approval, for the Wexners to take delivery of the painting,

19. After learning that the Wexners shared Epstein's evaluation of Shanks' painting, Epstein took possession of the painting in order to return it to Shanks.

20. Shanks and his lawyer rebuffed the efforts of Epstein to return the painting, claiming that Shanks then had no space in his studio for the painting, and requested that Epstein retain possession of the painting for an unspecified period of time.

21. Although, prior to December 6, 2001, the lawyers for the Defendants, on the one hand, and Shanks, on the other hand, each confirmed to the other that Epstein, and not the Wexners, maintained possession of Shanks' painting at Shanks' request, on December 6, 2001, Shanks' lawyer sent a letter to the Wexners, which among other things, demanded the return of the painting so that Shanks could display the painting as part of an exhibition at the Woodmere Art Museum in Philadelphia, Pennsylvania.

22. A lawyer of Defendants contacted Shanks' lawyer to advise that Epstein, who was holding the painting at the request of Shanks, was aware of the demand sent to the Wexners, and was making arrangements to deliver the painting to Shanks' studio in Andalusia, Pennsylvania. Defendants lawyer reminded Shanks that the Wexners never consented to and expressly prohibited the use of the names and likeness of Mrs. Wexner and her family members by exhibiting the painting, whether at the Woodmere Art Museum or any other venue, and that exhibiting the painting would constitute a violation of the Wexners' rights of privacy and publicity.

23. Shanks' painting was delivered to Shanks' studio in Andalusia, Pennsylvania shortly thereafter..

## THE WEXNERS' FIRST COUNT AGAINST SHANKS
(Invasion of Privacy / Appropriation of a Person's Portrait)

24. Defendants Leslie and Abigail Wexner incorporate by reference paragraphs 1 through 23 hereof as though fully set forth herein.

25. Because Shanks' painting has been out of Defendants' possession, they have had no control over its display. Upon information and belief, Shanks displayed his painting at one or more galleries or museums.

26. The Wexners have never given their consent to and expressly prohibited the use of the names and likeness of Defendant Abigail Wexner and her family by exhibiting Shanks' painting at the Woodmere Art Museum, or at any other venue or in any other manner whatsoever.

27.     Upon information and belief, Shanks displayed his painting depicting likenesses of Mrs. Wexner and her children as an exhibit in one or more public galleries, including, without limitation, the Woodmere Art Museum, where people pay to see his work.

28.     Upon information and belief, Shanks displayed his painting at one or more galleries, including, without limitation, the Woodmere Art Museum, to attract visitors to those galleries for Shanks' commercial advantage and for the advancement and promotion of Shanks' business as a portrait painter.

29.     The Wexners have been damaged by Shanks' violation of their rights as described above.

WHEREFORE, Defendants Leslie and Abigail Wexner respectfully request this Court to render judgment in their favor and against Plaintiff Shanks and declare that Plaintiff assumes both compensatory and punitive damages, fees, costs, an injunction prohibiting any further exhibition of the Wexner family painting, and any other damages or relief that this Court may deem appropriate and just.

## THE WEXNERS' SECOND COUNT AGAINST SHANKS
### (False Advertising)

30.     Defendants incorporate by reference Paragraphs 1 through 29 as though fully set forth herein.

31.     Upon information and belief, viewers of Shanks' painting depicting Mrs. Wexner and her children as displayed in one or more galleries, including,

without limitation, the Woodmere Art Museum and other exhibitions, were falsely lead to believe that the Wexners endorsed, or approved of, Shanks' painting.

32. Upon information and belief, viewers of Shanks' painting as displayed in one or more galleries, including, without limitation, the Woodmere Art Museum and other exhibitions, were falsely lead to believe that the Wexners were affiliated with, or endorsed the work of, Shanks by virtue of their appearance in a painting he displayed.

WHEREFORE, Defendants Leslie and Abigail Wexner respectfully request this Court to render judgment in their favor and against Plaintiff Shanks and declare that Plaintiff assumes both compensatory and punitive damages, fees, costs, an injunction prohibiting any further exhibition of the Wexner family painting, and any other damages or relief that this Court may deem appropriate and just.

Respectfully submitted,

Dated: April 30, 2003

*[signature]*

Lawrence J. Fox
Lawyer I.D. No. 15261
Christopher J. Guiton
Lawyer I.D. No. 89866
DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103

Lawyers for Defendants
Leslie and Abigail Wexner
Jeffrey E. Epstein
J. Epstein & Company, Inc.
Ghislaine Maxwell

13

## CERTIFICATE OF SERVICE

I, Christopher J. Guiton, hereby certify that on this 30th day of April 2003, I caused a true and correct copy of the foregoing Answer, Affirmative Defenses and Counterclaims to be served as follows:

### VIA FIRST CLASS MAIL

Jeffrey Hofferman, Esquire
**Gollatz, Griffin & Ewing, P.C.**
Four Penn Center, Suite 200
Philadelphia, PA 19103
(Attorney for Plaintiff)

By: *[signature]*
Christopher J. Guiton

14